Good morning ladies and gentlemen. The first case we have for argument this morning is the City of Chicago v. Jefferson B. Sessions III. Are you ready? Mr. Adler. Good morning your honors and may it please the court. Chad Radler on I will stop with five minutes left to reserve some time for rebuttal. You can watch your own time. Will do. In the same bill in 2006 that created the Byrne JAG grant program, the Congress gave the Assistant Attorney General for Justice Programs two new powers. One was to impose special conditions on the grants he oversees and two to determine the annual federal priority purposes for the formula grants he administers, which include the Byrne JAG grant. Now invoking those powers... So Mr. Radler, why is 34 U.S.C. 101-02-A-6's grant of authority to the Attorney General located in the subchapter from the Byrne program? And why wouldn't the statute state that it applies that section to the rest of the chapter? It doesn't state that, let alone to the Byrne program. Thank you Judge Rovner. A-6 states, and this of course is the threshold section, this is the section that sets out the duties and powers of the Attorney General for his duties in overseeing all of his responsibilities. And so there it says that he may impose special conditions on all grants. And of course that has to be read to include all of the grants that he oversees. And we know from the subsection that covers the Byrne JAG grant, that of course the Byrne JAG grant is one of the grants that he oversees. So this is a threshold power that the Assistant Attorney General has over all of the grants that he administers. And he invoked those powers by placing... Forgive me, but of course Congress delegated authority to impose conditions on other grants in the same chapter and did so clearly. I never mentioned anything about this. It's generally presumed that Congress acts intentionally and purposely in disparate inclusion or exclusion. I think that's right. And so there's two important things to point out. One is that Congress was very intentional in 2006. It did two things. One, it created this grant. The grant did not exist before 2006. And then it gave this Assistant Attorney General who oversees that grant two specific powers over all of his grants. The conditioning power and the priority purpose power. Now certainly there are other grants where Congress has said other things about conditioning power and Congress has the ability to use different words in different contexts. So for example in the grant that's not overseen by this Assistant Attorney General, but it's separately overseen, there Congress said that the Department could place reasonable conditions on grants and the Department has exerted that power as well. So there are a number of ways that Congress can authorize the Assistant Attorney General and the Attorney General to impose these conditions. The term special conditions that's referred to in the subsection which states that the powers and functions vested in the Attorney General include placing special conditions on all grants. That is a term of art for conditions intended and I quote for high risk grantees with difficulty adhering to existing grant terms. You know you argue that the city should not be allowed to impede the federal government in its immigration efforts, but how is this a case of interference with the police to be conscripted into aiding the federal government? Isn't the determination as to how best allocate police resources in a community, an area that has traditionally, traditionally been reserved to the states, not to the federal government? Judge Rovner, I agree with a lot of what you said, and in fact, virtually all of the community policing that the city wants to do is not impacted by these conditions. These conditions are extremely narrow. They impact only individuals who are incarcerated, so they don't impact broader community policing. They impact only individuals who are incarcerated, and only those individuals who are suspected to be here illegally. Now, with respect to law enforcement and immigration, there's a long history of cooperation between the United States and state and local governments. That's right, cooperation, not enforced conscription. Well, Your Honor, I would say that this is a voluntary grant for the city to enter into, so there's nothing imposed on the city. This is not direct regulation by the federal government of the city. This is a voluntary grant that the city can accept or reject, and with every federal grant, the federal government makes money available, but there are always certain conditions that are placed on those grants. This particular case addresses whether the executive branch has acted without authority to impose its own requirements on grants approved by Congress, and which impose a burden on an area traditionally considered an area of states' rights, and that's why it's so significant, because it concerns the power of the federal government through the executive branch to impose a burden on states that are exercising traditional police power when Congress itself chose not to impose that burden as a condition of its grant. It's a very surprising argument. May I answer the question, Your Honor? I don't know. What do you think? Yes, of course. Thank you. Thank you. I think all of the issues that you refer to are covered by the Dole case, South Dakota versus Dole, which is the traditional case that we always apply in the context of grant making. And so, yes, there are limits on the federal government. It can't compel a state to engage in unconstitutional conduct. It can't coerce it by making the amount of money at issue so significant that a state or local government could never say no. But here we're talking about less than 0.1% of the state's overall budget, and the conditions have to be related to the purpose of the grant, which is criminal justice, and here we're talking about individuals who are incarcerated. So it clearly satisfies all of the Dole standards, and in fact, my friends from Chicago really haven't asserted the Dole standards in this appeal. So I think we cover all the bases in terms of the state-federal relationship. But the point I want to... If the... If 101-02-86 is read as allowing the Attorney General to place conditions on all grants with no limiting language, is there nothing to require that such conditions be related to the purpose of the grant? What in that language, as you would have us interpret it, would prevent the Attorney General or any Attorney General from... because I'm looking down the road here too... from requiring states to provide support for any and all of the administration's preferred policy objectives? Can you help me with that? Absolutely, Your Honor. And that's why the Congress was quite broad here. They said both conditioning power and priority purpose power, and so the last administration was the first one to invoke an immigration-related requirement, and this administration has picked up on that. But every year, this grant has over 50 conditions that require a host of information sharing, like the information sharing that's required from these conditions. But I would like to talk about the limits, because there are a number of limits. First off, the Congress... I want you to help me with this. to come question such cardholders to assess the validity? Well, there are limits, which I was going to address. There are limits on the authority, of course, of the Attorney General. Right, right. But this is a yes or no question, it seems to me. Well, the test you would apply is, one, are those limits constitutional? So there might be Second Amendment or Fourth Amendment or other constitutional concerns raised by the conditions. Those sound like they're related to law enforcement, so I think you'd satisfy the germaneness criteria of Dole. And assuming that they're not too coercive, then it may well be that the Attorney General has that authority. But I'd like to say... Your answer basically is yes. Based upon your description, it sounds like a condition that would probably satisfy the Dole standard. But there are other inherent limits. If the government is putting restrictions on grants that are so onerous or distasteful that no city or state wants to accept them, then it will entirely defeat the purpose of the grant program. So the United States is not trying to deny localities from using this money for law enforcement purposes, but they're just putting reasonable conditions on the use of that money. If they become so unreasonable, no city will accept them, and the grant program will become obsolete, which is not the objective of the United States. Oh, it may very well be the objective. It may very well be the objective. How can we know what the objective is down the road here? You know what? I think you should go to your other argument, because I've taken up so much of your time, and so I'd like to ask you in what circumstances is a nationwide injunction appropriate and whether or not there are any standards that you think should be met before courts impose such a broad injunction. If I could interject just for a minute before you get to that. The main concern I have here is that when someone is incarcerated under state law serving a sentence, is there some resistance from the local government to give notice and access to those prisoners before they're released? Yes, there has been. These conditions actually were the original genesis for the conditions was an inspector general report that was published in 2016 in the last administration, and it indicated areas where cities and states were not cooperating with the federal government in terms of just information sharing, just sharing information about who they're housing in their correctional facilities. Yeah, we're not talking about people on the street. I would call it street law. Correct. I know a lot of the green briefs that focus on it. They need cooperation from witnesses and all that sort of thing. I'm referring specifically to people who have been convicted, have served and are serving, are finishing up their time in state prison to have notice and access because those people are deportable. If it were in federal prison, there's no supervised release because they're not going to be here. They're going to be deported. So in state, that's the one thing that really concerns me about this, is there's some resistance from the local government, either the police are told not to cooperate, when the natural consequence is you would think, I'm not from Chicago, but you would think that those are the kind of people who are eligible for deportability. You want them deported. It's not a matter of kids on the street or whoever they're worried about. That's correct, and if someone is in the facility for a very short time, the condition itself says you have to give notice where practical. So we're not talking about someone who they've picked up for 24 hours, but someone who's in there a longer period of time will be released at some point, and the government would like 48 hours notice before that person is released. And I do want to go back to the cooperative aspects of immigration. Justice Kennedy in his decision in Arizona said that consultation between federal and state officials is an important feature of the immigration system, and the federal government honors its end of the bargain. If the federal government is holding someone who's deportable, but a state or local government wants to prosecute that person, typically the federal government will turn that person over to the state of Illinois or the city of Chicago to let them try and impose the penalty on that person. But what the federal government wants, and it's doing it through the condition, is on the back end when that person has finished their time in the state or local facility that the federal government be told when the sentence is ending so the federal government can detain that person and deport them consistent with law. Okay, you can go on to the other issue then. There are two, I think, well-settled limits on the scope of relief that a court can enter. Those are both standing, traditional standing requirements, and then also equitable limitations on injunctive relief. And unfortunately, the relief here violates both of those standards. The plaintiff is required to have standing for all of the claims and relief it seeks, and the Supreme Court in the town of Chester, this court in the McKenzie case, Judge Easterbrook's case, joined by Judge Posner and Judge Mannion, makes very clear that a party can only get relief to remedy its own injury. Now, there might be some cases where a party has asserted an injury, and to remedy it you have to give very broad relief, and Judge Easterbrook gives a couple of examples. Desegregation cases, redistricting cases. If you're going to grant relief to an individual, you're really going to grant relief much beyond that individual to be able to remedy their injury. But here, Chicago concedes. They concede that they don't need a nationwide injunction to remedy their injury. They concede that an injunction that bars the government from enforcing these conditions against Chicago fully remedies the city for its injury. But unfortunately, the decision below wipes away all those limitations and grants relief to a host of parties. It simply says that the Attorney General doesn't have the authority to do what he did. Correct. The legal holding, that's correct. But the remedy was to enjoin us from enforcing these conditions against anybody, any city. You're running out of time, I understand. Thank you. I'll reserve the last two minutes. Thank you very much. Ms. Sullivan. Thank you, Your Honor. May it please the Court. The Attorney General makes exactly one claim to authority for the notice and access conditions he attempted to impose on the Bern JAG funds, and it is not in the Bern JAG statute. This morning I will explain that the claim is not supported by the language the Attorney General relies on, is precluded by the text and the purpose of the Bern JAG statute itself, and it makes no sense. The District Court correctly ruled that the conditions were ultra-various. I will also explain that the District Court properly exercised its discretion to enjoin the Attorney General's notice and access policy in its entirety rather than limiting the injunction to Chicago. The statutory language on which the Attorney General relies provides that the Assistant Attorney General of the Office of Justice Programs may, and I quote, exercise such other powers and functions as may be vested in the Attorney General pursuant to this chapter or by delegation of the Attorney General, including placing special conditions on grants and determining priority purposes for formula grants. By its plain terms, this language does not confer authority. It merely allows the Assistant Attorney General to exercise authority that is otherwise given by statute or by the Attorney General out of authority that the Attorney General is otherwise given. And the Attorney General does not even claim that this authority is elsewhere conferred. Instead, he reads this language that I quoted as a grant of authority, but the language precludes that construction. Now, he emphasizes some of the words in the provision, special conditions and priority purposes, but those words follow the word including. And when you read the provision in its entirety, it says, if you have other authority that we vested in you, we, Congress, have vested in you, Assistant Attorney General, or that we have vested in the Attorney General and the Attorney General has delegated, then you may exercise that authority and in the exercise of that authority you may impose special conditions or priority purposes. So those words are dependent on the language of the entire provision and they require antecedent authority. They do not themselves confer authority. Now, Section 1002, the provision in context quite obviously merely authorizes the Attorney General to assign his own powers to the Assistant Attorney General. The Attorney General hasn't demonstrated any other provision that could be read as authorizing the relief, or has he? Your Honor, he not only has not identified any provision, he doesn't claim that there is another provision. They read this language. They focus on the word special conditions and say, so you see, Congress gave us authority to impose special conditions. But Congress did not give authority to impose special conditions. Congress gave authority to impose special conditions where the power and function had been vested in the Attorney General, pursuant to this chapter, or otherwise by delegation. So what they are missing is that grant of authority. We readily concede that where the grant of authority exists, the Assistant Attorney General can impose special conditions and identify priority purposes. But he can't make them up out of whole cloth, and he can't rely simply on the words special conditions and priority purposes to find that authority. The language precludes that, but in addition, the context of that subsection 6 is extremely important. It provides for publishing and disseminating information, maintaining liaison with various people, providing information, maintaining liaison with other people, coordinating this and that. And then there's the clause that is at issue in this case. And it is unreasonable to think that after a long list, a list of five very bureaucratic provisions that are all tied to normal things that you would expect someone to be doing in this office, that the Assistant Attorney General is given the authority to rewrite all of the federal grant statutes. The provision simply does not say that, and it is unreasonable to read it that way. So you're saying that the law is not broad enough for the Attorney General to do that? Absolutely, Your Honor. So Congress would have to expand the law? The language is not there to give the Assistant Attorney General the authority to impose special conditions on the burn-jag funds. Okay, then I think that's a valid point. But again, I go back to the other side. What concerns me is this notice in excess for a convicted criminal who's serving time in state, and then it's time for him to be released. And is there some resistance from the city to the police to cooperate with the feds and turn this guy over? We do not resist that, Your Honor. In other words, this is not a problem, then, in your view. They should be and are restrained, and then the feds have the opportunity. There would be other process, as usual, about whether someone's deportable or not. But that goes back in and shifts back in under the feds once they have control over the person. It's not getting that control that would concern me. I know all this other stuff, a lot of the green briefs, they talk about cooperation on the street and witnesses and whatever, and there's a lot of people who, whatever you want to call them, illegal or undocumented or whatever, that don't want to be exposed. And so they won't cooperate unless they're told, we're not going to ask you these questions or whatever it is. But that's the only thing that I focus on. Right, and that is not a problem for the city of Chicago, Your Honor, for several reasons. First of all, our ordinance contains an express exception for persons suspected of or charged with serious crimes. So that's the first thing. Any concerns about serious, violent felons is simply not a problem for the city of Chicago. So what is the concern? What is the problem, then? Well, we don't actually hold anybody long term. So the desire to have notice by the government to the federal government of someone who is being released from long-term incarceration after serving a sentence for a state offense, we don't do that. We don't run the jails. We don't run the prisons. We don't incarcerate people long term. Our goal is to get everybody out of there. That's either county or state. Within 24 hours. I'm sorry, Your Honor? The incarceration is either county or state, not city. It's not the city of Chicago, exactly. So this is not a conviction. Then they're in a separate prison and whatever. Right. And that's, I guess, maybe the city can't stop them anyway, then. We can't stop them. We don't know when they're being released. We can't notify anybody. I mean, the attempt to put these conditions on a grant for the city of Chicago and other local governments that simply don't operate these kinds of facilities, it just doesn't fit. So, as I say, I do want to emphasize that for serious crimes, there's an exception right in our ordinance. And beyond that, we simply don't hold anybody. We don't have people who are in the situation that the federal government is attempting to address. And I do also want to point out that the statistics of the Immigration Customs Enforcement itself show that the vast majority of the people who are being detained through these kinds of programs and requests are nonviolent misdemeanors, misdemeanants. They, you know, it's not, and those are ICE's own statistics. This is not actually a program that gets at serious violent violence. So they're in jail or whatever, overnight or for a few days or something, and then they're released. Is that it? And I guess the question is when they are apprehended for whatever reason, there's a, you know, everybody knows now you just punch a button and check their background as soon as you get whatever identification they have. Right. And I don't know what happens when you find someone that has no background. In other words, they don't have a social security number, they're not a citizen, they're not, they're just here. And I don't, what's the reaction then with the arresting officer? You know, arrestees by the city of Chicago are either allowed to bond out pursuant to state law for certain offenses, or they are taken to a prompt Gerstein hearing. We don't hold people. We get into trouble when we hold people. You know, there are constitutional limits on that. We've seen some of those. We have seen some of those, Your Honor. Exactly. And so we are very anxious not to get into a situation where we're going to have those problems. The Chicago Police Department. My understanding is that ICE's own FY 2017 records, its statistics show that 26% of the arrestees have no criminal offenses at all. Correct. And 56% of the others involved absolutely nonviolent offenses like traffic tickets. Correct. And those were the statistics that I was referring to, Your Honor. Thank you very much. So I want to make one other point about the language that the Attorney General relies on here, and it is that the reading the Attorney General proposes would drastically conflict with the Bernjag statute itself. That statute not only contains no authority to impose substantive conditions, but it is a formula grant program, and by definition those programs give very little conditioning authority to the executive branch. And that's because Congress identifies the purpose of those grants. Congress identified the eligibility requirements for those grants, and Congress required the Assistant Attorney General, provided that the Assistant Attorney General shall allocate funds in accordance with a specific formula based on population and crime statistics. Now, speaking of populations, because time is fleeting, was the geographic scope of the preliminary injunction argued in the district court prior to the reply brief in support of the preliminary injunction? And if not, why wouldn't that be too late, given that the opening memorandum discussed only the impact on the city and I believe 11 neighboring localities? It's a very good point, Your Honor. The entire argument in opposition to the motion for preliminary injunction on the issue of the nationwide injunction was exactly two paragraphs long. It did not raise Article III, which granted it cannot be waived, but the failure to raise it there certainly should shed some light on the Attorney General's own view about the strength of that argument. And it simply confused routine programs that might not be appropriate for nationwide relief with the integrity of a formula grant program such as this. So why does the city need nationwide? It seems to me that whatever the argument that you're making protects the money that comes to the city. So what's the nationwide injunction for? Well, there are a couple of points on that, Your Honor. And the first is that this is, again, a formula grant. It applies to all applicants exactly the same way. There is one pot of money, and it's divided up among applicants. Yeah, but there are a whole lot of people varying across the country. Yes, a number of the green briefs seem to focus on this. A couple of them don't, the sheriffs and others. They say, hey, they don't want this imposed on them. They cooperate with the government, et cetera. So I think that's my concern about the nationwide part. Well, of course, any jurisdiction that wishes to cooperate with ICE is free to do that. There is no restriction, and the city of Chicago does not intend or purport to tell anybody else how to run their business. So why is it spread through the whole nation? Well, the injunction, Your Honor, is directed to the Attorney General, who is the defendant in this case. He promulgated one policy, a uniform policy, providing for notice and access conditions on these grant funds. The district court determined that that policy was ultra-varied. It does not keep, the injunction does not keep the city from telling the federal government what they want to know. It does not whatsoever. It is directed. It just says you can't do anything about it if they don't. It is directed to the Attorney General, the single defendant below. So I also want to emphasize this. You know, the Attorney General actually cites not a single case, not a single case that identifies an Article III problem as entering a nationwide injunction against a single agency policy. And by contrast, we cite a vast number of cases in which this is exactly what gets done. It's actually the common remedy, the prescribed remedy by Congress under the Administrative Procedure Act in 5 U.S.C. 706, where the agency action is unlawful. It shall be set aside. And that's what the district court did here. So there simply is no Article III problem here whatsoever. And beyond Article III, we certainly agree that an injunction of whatever sort is judged on review by the abuse of discretion standard. And the district court in this case made very, very specific findings about why it was entering the injunction on a nationwide basis. And that is because there was no reason to think the legal issues present in this case are restricted to Chicago or that the statutory authority given to the Attorney General would differ in another jurisdiction. And I do want to emphasize, and that's a direct quote from the district court's decision. But I do want to emphasize in that connection, there is not even a claim in this case that the conditions would apply differently in different places. Anybody who wants to honor those kinds of conditions is free to do so. The injunction does not affect anybody other than the Attorney General. And it tells the Attorney General, because the conditions are unlawful and because you have attempted to impose them on a uniform federal grant program, a formula grant program, that is supposed to be administered on a uniform basis around the country, when because they are unlawful, they are going to be enjoined across the board. And as I say, this is a very common remedy where the federal government is the defendant and is pursuing a single nationwide policy. The district court also emphasized that the benefits of a nationwide injunction vastly outweighed any of the downsides. And the district court was aware of the concerns presented by a nationwide injunction. It might induce forum shopping. It might lead to conflicting injunctions. It might stymie the development of the law. The district court considered all of those and, nonetheless, in the exercise of its discretion, determined that the benefits outweighed the downsides. And that was an exercise of discretion. Two out of four, anyway. Well, there is not even a claim of forum shopping here, of course. This is where the city of Chicago is located, and this is where we filed suit. As far as a risk of conflicting rulings, you know, there is ongoing litigation elsewhere in the country. There is already a ruling in Philadelphia agreeing with the district court here that the conditions are unlawful. Is that going to the Court of Appeals yet? Not to my knowledge, Your Honor. Okay. Of course, you've got the thing going on in California right now. In two cases in California, I'm sorry, Judge Roebner, the city of Santa Clara County and the city and county of San Francisco, as well as a separate case by the state of California. But the important thing there is no one's attempting to put a stop to that litigation. The effect of the nationwide injunction here does not tell the courts handling those cases how to decide the merits of those cases. That's for the district courts and the... The Attorney General announced the day before yesterday that there would be an appeal of Judge Bailson's decision to the Third Circuit. Thank you, Your Honor. But so, again, the point of the nationwide injunction, it is preliminary relief, and as the district court explained, it was an appropriate provisional remedy to fit this case, to fit these parties, and to fit the threatened harms. The district court expressly found irreparable harm. That finding is not challenged in this court. So we do urge that because the city of Chicago unquestionably has standing to proceed on its claims, including a claim for injunction, the city's standing is not questioned. Thereafter, Article III itself imposes no further requirement. The Attorney General does not cite a single case like that, not a single case finding an Article III problem. It is simply a question of abusive discretion, and the district court here properly exercised its discretion. We urge this court to affirm. Thank you. Right on schedule. You hit it right on the head. I've got help. She saw who was sitting in that seat. A couple of very brief points. First off, with respect to the statutory authorization, the statute is quite clear. My friends note that formula grants are often quite conscripted, and that's why it's so important what Congress did here because it told the Assistant Attorney General that he can impose special conditions on all grants that he oversees. That includes the formula grants, so Congress thought about that and gave him that power, and they also said very important that he could determine priority... What are you arguing for? Sorry? What a slippery slope you are arguing for. Well, I'm arguing consistent with the Congress' words because they also said that you can determine priority purposes for formula grants. So this kind of grant, a formula grant, the Congress expressly said you can consider and impose priority purposes, which is exactly what the Attorney General has done here. And my friends on the other side point to no explanation for the priority purposes means or the special conditions. They give those words no meaning, and surely Congress did not include these words for no reason. Second, I would like to note that there are 50 or more conditions that are typically put on these grants, and if the city is right, then many of these conditions will go by the wayside, and many of those are standard information-sharing conditions that regard a global justice initiative program that's run by the Department. The Department says that if you do DNA testing, you have to upload that to an FBI computer. That condition would go. But your argument basically is that the Attorney General or the Assistant Attorney General through the Attorney General can impose any conditions he or she believes necessary in addition to the statutory requirements that Congress has set out. Where's the separation of powers? What's going on? Well, Your Honor, the Congress, one, spoke to it. I mean, it gave the power to impose conditions and determine priority purposes. Congress was quite clear that it wanted the Chief Law Enforcement Officer. We're talking about the Chief Law Enforcement Officer imposing conditions on law enforcement grants. That makes perfect sense for Congress to do. And, again, these are voluntary grants. This is not direct regulation. It is a voluntary grant that the city can accept or not accept. And Attorney Generals before this have imposed a host of conditions, and this Attorney General has put conditions on. There's never been a challenge to it until today. And may I have just 30 seconds to talk about the final issue? Go ahead. I'd just like to make a couple of points about the nationwide injunction, the relief here. One, the issue was not waived. It was briefed below. It was argued in front of Judge Leinenweber, and, of course, standing can't be waived in any event. Two, we give you the McKinsey case, a case from this court that is both a standing ruling and an equitable ruling that says that relief has to be limited to the parties at issue. Going beyond that would basically make every case a class action without all the procedural protections that are in place for class actions, and Judge Easterbrook was very critical of that outcome. Are you arguing that the Supreme Court of the United States has not ruled that nationwide injunctions are proper in certain cases? Is that your argument? Well, the Supreme Court has said that the relief should be appropriate to the parties before the court, and that's very consistent with our position here. Another way to say this, Judge Rovner, is that the plaintiffs, the Chicago, has not given us a single case. They haven't given us a single case where a court said, I recognize that I'm giving more relief than is necessary to remedy the plaintiff's injury, but I think that's okay and I'm going to do it, and it satisfies Article III and it satisfies the rules on injunctions. All right. You've made it. Thank you very much. Thank you very much. Thank you to all the counsel on both sides. We'll move on to the second case.